Plaintiff, alleging itself to be the owner of a certain Dodge 1 1/2 ton truck, 1941 model, and one Nabors Brothers trailer used in connection therewith, in the possession of the defendant, prayed for and obtained a writ of sequestration of the same. The defendant, in a motion to dissolve the writ, denied the ownership of the property to be in plaintiff, and prayed for attorney's fees for the dissolution of the writ in the sum of $50, with reservation to sue for further damages as the issuance of the said writ may have incurred.
On the trial of the motion to dissolve, the trial court rendered a judgment in favor of defendant and against the plaintiff, dissolving the writ of sequestration and granting the defendant the sum of $50 as attorney's fees, with reservation to him of such damages which the illegal issuance of the writ may have incurred. From this judgment, plaintiff has appealed.
The uncontroverted facts are that on December 31, 1943, the property in question, together with other property, were owned by W.A. Walker, a timber operator. Walker was desirous of selling the same. Defendant desired to purchase the same but had not the means to do so. Defendant had been working with Walker and they had been logging for plaintiff. Walker and defendant sought the financial aid of plaintiff. Walker sold all of his logging or timber operation equipment to plaintiff for the sum of $4,500 and delivered the equipment to defendant. Plaintiff charged defendant on its books for the sum of $5,212.32 as the value of the said equipment delivered by Walker to defendant.
In the course of their dealing, that is, between plaintiff and defendant, plaintiff credited defendant's account with the sum of $1,418.31 for hauling of logs at $3 per M. feet and further credited defendant's account for a certain portion of the equipment, however not including the property in question, which had been transferred by the common consent of plaintiff and defendant to defendant's brother, reducing the said account to $164.67 at the time of the issuance of the writ of sequestration.
It is the contention of the plaintiff that the property was leased to the defendant at the rental sum of $3 per M. for all logs hauled by him to the plaintiff with the entire equipment, while it is defendant's contention that the entire equipment was purchased by him for the sum of $5,212.32, to be paid by him at the rate of $3 per M. of *Page 360 
logs delivered at plaintiff's mill, the logs to be obtained from property belonging to plaintiff or from property upon which the timber belonged to plaintiff.
According to Van F. Miller, one of the partners composing plaintiff's firm, defendant was charged with the sum of $5,212.32, being the amount he owed on the equipment and he was to pay it out by hauling logs at $3 per M. feet and was accordingly credited with the sum of $1,418.31. On August 16, 1944, defendant was further given a statement of his account which showed that he had been credited with "eight oxen, two horses," leaving a balance due by him of $237.69. However, regardless of this testimony, the witness did state later in his testimony that the equipment had been leased to defendant upon the basis of $3.00 per M. delivered to plaintiff and that when the amount charged to him would be satisfied the equipment would be transferred to him if satisfactory terms could be adjusted. This statement is contradictory to the question "On this equipment that you were to transfer to him when he got through paying for it? Answer. Yes * * *," thus showing that the transfer of the title to the property was conditioned until defendant had paid for the equipment.
The testimony of E.B. Saul, Sr., the other member of plaintiff's partnership firm, is to the effect that he purchased the equipment, including the property involved, from Walker and "let" the defendant have it on a rental basis of $3 per M. for hauling. He had no other understanding with defendant particularly for the purchase thereof. The defendant was to use the equipment solely to haul logs for plaintiff and to bring the equipment to plaintiff's plant every Saturday evening, and which defendant violated.
The defendant testified that he purchased the equipment, including the truck and trailer, from plaintiff; he had made a deal with Walker for their purchase for $4,500, but on account of finance he could not consummate the deal, and thereafter Walker sold the equipment to plaintiff and plaintiff sold the equipment to him. He was charged on plaintiff's books for the amount of the purchase. He paid "about $2,300.00 and a few cents," on the purchase price. He identified certain statements (credit memoranda, given to him by plaintiff which he contends were payments on the equipment). He had no definite agreement as to how much or anything he was to pay weekly. He was to pay weekly whatever he could. The remainder of the equipment had been transferred to his brother Grady with the consent of plaintiff. Plaintiff gave him credit and charged his brother therefor. He procured the necessary licenses, procured the necessary "Certificate of War Necessity," paid the insurance on the trucks and trailers, etc. He absolutely denies that he rented the equipment. His testimony is corroborated by certain documents filed in evidence.
Roy Hood testified that on the next day after plaintiff had purchased the equipment from Walker, he, Hood, sought to buy the equipment from plaintiff, and that one of the partners, in the presence of the other partner, told him that they had sold the equipment to defendant.
Willie Walker, the former owner of the equipment, testified that he and defendant had reached an agreement concerning the sale of the equipment by him to defendant, but defendant did not have the money to pay for the same. He saw Mr. Miller and Mr. Saul. He sold the equipment to them and delivered the equipment to defendant. He does not know what agreement was had between plaintiff and defendant.
[1, 2] Under these facts, we are of the opinion that there was a sale rather than a lease of the property to defendant. The most that can be said in plaintiff's favor is that it was a conditional sale, that is, that the ownership of the property was to remain in plaintiff until paid for by defendant, a sale not recognized under our laws.
[3] Plaintiff contends, in the alternative, that, if there was a sale, the sale was subsequently abrogated by the defendant when the defendant delivered the property to plaintiff in satisfaction of the debt he owed plaintiff. Defendant denies having given the property in contest in payment of the balance due plaintiff. Defendant admits delivering a certain portion of the property, the property sold to his brother Grady, to plaintiff, but denies delivering the remainder of the property. We find no merit in plaintiff's contention.
[4] Finally, plaintiff contends that if it be held that the transaction was a sale transferring the ownership of the property to defendant, then it had a vendor's lien which justified a sequestration. Without discussing the merits of this contention, we desire to point out that there is no such alternative *Page 361 
demand or claim in its petition and to so hold would be ultra petitionem.
For these reasons, the judgment appealed from is affirmed.